# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| CRAFTLINE GRAPHICS, INC., and KAPPA GRAPHICS, L.P., </br></br>Plaintiffs, </br></br>v. </br></br>TOTAL PRESS SALES & SERVICE, LLC, </br></br>Defendant. | ) ) ) ) ) ) ) Cause No. 1:17-CV-462-HAB ) ) ) ) ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiffs Craftline Graphics, Inc.'s ("Craftline") and Kappa Graphics, L.P.'s ("Kappa") Evidence in Support of Request for Damages in Connection with their Motion for Default Judgment (ECF No. 32) (the "Evidence Submission"). The Evidence Submission is the culmination of a long process whereby Plaintiffs have repeatedly attempted to obtain default judgment against Defendant Total Press Sales & Service, LLC. (*See* ECF Nos. 11, 17, 19, 25). Unfortunately, Plaintiffs' filings seeking entry of default judgment and damages have failed to satisfy legal requirements. The most recent Order and Opinion from this Court (ECF No. 29) granted Plaintiffs additional time to submit admissible evidence related to the claim for damages related to Kappa's anticipated repair costs. (*Id*. at 17–18). Plaintiffs were subsequently granted an additional ten days to submit such evidence. (ECF No. 31). Having reviewed the Evidence Submission, the Court concludes that the evidence submitted does not satisfy the threshold for admissible evidence. Accordingly, judgment will be entered in favor of the Plaintiffs in the amount of $1.00 as nominal damages based upon the absence of evidentiary proof of actual damages.

# THE EVIDENCE SUBMISSION[1]

The nine-page Evidence Submission is accompanied by two affidavits. The first is the affidavit of Robert Cook, Craftline's Vice President of Operations (ECF No. 32-2). Cook testified to the allegations in Plaintiffs' Amended Complaint, setting forth Defendant's errors and omissions in disassembling and reassembling the printing press that is the subject of this lawsuit (the "Press"). (ECF No. 32-2 at 1–3). Cook then attempted to designate evidence in support of two categories of damages. First, Cook testified that Craftline paid ManRoland, Roland Graphics Services, and other vendors a total of $60,972.73 because of Defendant's breach. Then, Cook testified that he "spoke with Richard Grobarek and other ManRoland technicians about the problems [Defendant] was causing caused [sic] during the reassembly, installation, and repair of the Press. The total amount of ManRoland's estimates is $500,759.91." (*Id*. at 4). Appended to Cook's affidavit is the affidavit of David J. Bosko, Vice President of Finance for Craftline. (*Id*. at 6–7). Bosko's affidavit serves as Craftline's attempt to authenticate documents via an affidavit from a records custodian. Bosko attached two sets of documents to his affidavit: (1) an account payment summary reflecting the $60,972.73 amount in Cook's affidavit (*Id*. at 8); and (2) correspondence and estimates from ManRoland (*Id*. at 9–19) (the "ManRoland Estimates").

The second affidavit is from Timothy J. Cotter, Jr., Senior Vice President of Operations for Kappa (ECF No. 32-1). The key part of Cotter's affidavit is paragraph 10, wherein Cotter testified:

> Paragraph 3., <u>Contract Price and Payment</u> of the Contract, required Kappa to pay [Defendant] a total of $294,450, in accordance with the milestone schedule found at Paragraph 3.(b). Of the $294,450.00 due to [Defendant], Kappa paid $213,000

---

[1] The Court notes the unusual introduction in the Evidence Submission requests that the Court not penalize the Plaintiffs based upon some perceived disrespect by Plaintiffs' counsel. The introduction is surprising given that the Court has provided the Plaintiffs with four attempts to provide admissible evidence to support their requested relief, and Plaintiffs have repeatedly failed to do so despite the guidance and opportunities provided by the Court. The Plaintiffs' filings have left the Court with no alternative but to enter an award of nominal damages. The Plaintiffs' submissions would not withstand the most limited review on appeal. The Court's decision is not an effort to penalize anyone; the Court is simply fulfilling its duty to apply the law.

in 2015 and $40,000 in 2016, for a total of **$253,000.00**. None of the money was returned by [Defendant] to Kappa.

(*Id*. at 3) (original emphasis). Appended to Cotter's affidavit is the affidavit of Martin Genello, Controller for Kappa (*Id*. at 5–6). Like Bosko's affidavit, Genello's affidavit serves as a records custodian affidavit. Attached to Genello's affidavit is summary of payments Kappa made to Defendant (*Id*. at 7). The total of those payments is $253,000.00.

## LEGAL ANALYSIS

A.  *ManRoland Estimates*

The purpose of this Court's May 24, 2019, Opinion and Order, other than to dispose of those claimed damages that were not supported by law, was to give Plaintiffs another opportunity to submit admissible evidence regarding the anticipated cost to repair the Press. From the beginning of their attempts to obtain default judgment, Plaintiffs have relied on the ManRoland Estimates to support these anticipated costs. Therefore, the primary, and in fact only, task for Plaintiffs following the May 24, 2019, Opinion and Order was to present the ManRoland Estimates in admissible form and justify the necessity and reasonableness of the amounts shown therein. Plaintiffs have failed to do so.

Although upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered are ordinarily not. *See United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). The plaintiff must provide evidence of damages. 10 *Moore's Federal Practice*, § 55.32[1][d] at p. 55–45 (3d ed. 2013) ("The claimant must establish the amount of damages . . ."). Where a party uses affidavits to support its claim for damages, the evidentiary material offered should consist of material within the personal knowledge of the affiant and not

3

hearsay, and attached exhibits should be accompanied by sworn statements of the circumstances that would qualify them as full exhibits. *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4 (2nd Cir. 1970). Judgment cannot be entered based on claims of damages that are unsupported by admissible evidence. *See Cent. Laborers' Pension, Welfare and Annuity Funds v. Stormer Excavating, Inc.*, 2008 WL 5142159 (S.D. Ill. 2008).

Plaintiffs first attempted to introduce the ManRoland Estimates through the affidavit of their counsel, Kevin Podlaski ("Podlaski") (ECF Nos. 12-5, 17-4, 20-3), and then through the affidavit of Robert Towns, President and General Counsel for Spartan Organization, Inc. (ECF No. 26-3). Plaintiffs now attempt to introduce the documents through the Cook/Bosko affidavits. However, these repeated attempts are little more than different verses to the same song. In each case, Plaintiffs wholly fail to introduce the ManRoland Estimates in a way that either establishes their authenticity or resolves the clear hearsay problem. Simply put, the ManRoland Estimates are no more admissible in their current form than they were when they were submitted for the first time eighteen months ago.

Authentication of evidence is governed by Article IX of the Federal Rules of Evidence. Rule 902(11) states that domestic records of a regularly conducted activity, i.e., business records, are self-authenticating if they meet the requirements of Rule 803(6)(A)–(C) and if the compliance with those requirements is shown by a certification of a custodian or other qualified person. Rule 803(6), in turn, states that a record is excluded from the rule against hearsay if:

(A) the record was made at or near the time by–or from information transmitted by–someone with knowledge;
(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; [and]
(C) making the record was a regular practice of that activity.

Fed. R. Evid. 803(6)(A)–(C). Therefore, the ManRoland Exhibits can only be admissible if the requirements of Rule 803(6) are demonstrated by the affidavit of a qualified person.

The Evidence Submission attempts to comply with these requirements through the Cook/Bosko affidavits. However, neither Cook nor Bosko can lay the proper foundation for the introduction of the ManRoland Estimates because neither is qualified to testify about the record keeping of ManRoland. 7 *Handbook of Fed. Evid.* § 803:6 (8th ed.), citing *Powell v. Vavro, McDonald, and Assoc., L.L.C.*, 136 S.W.3d 762, 765 (Tex. App. 2004); *Great Seneca Fin. v. Felty*, 869 N.E.2d 30, 33–34 (Ohio Ct. App. 2006). Stated another way, to comply with Rule 803(6), Cook and/or Bosko must show not only that the ManRoland documents were in Plaintiffs' records, but also that ManRoland kept the estimates in the course of its regularly conducted business activity and created such estimates on a regular basis. *See Webb v. Midland Credit Mgmt., Inc.*, 2012 WL 2022013, at *4 (N.D. Ill. May 2, 2012); *Cunningham Charter Corp. v. Learjet, Inc.*, 2012 WL 1565532, at *3 (S.D. Ill. May 31, 2012). Neither Cook nor Bosko so much as attempt to demonstrate that the requirements of Rule 806(3) were satisfied on ManRoland's part. In the absence of evidence regarding ManRoland's record keeping practices, the ManRoland Estimates remain inadmissible.

The Court would also note that Plaintiffs knew they needed an affidavit from ManRoland to recover the amounts reflected in the ManRoland Estimates. In their Motion for Extension of Time to Respond to Court's Order (ECF No. 30), Plaintiffs expressly stated:

> In order to comply with the Court's request, ***Plaintiffs must obtain authenticated*** diagnostic analysis and repair report, ***estimates***, and invoices ***from the printing press manufacturer ManRoland*** Sheetfed GmbH, a German company, which has headquarters in Offenbach, Germany.

(*Id*. at 1) (emphasis added). The Court's determination, then, is not some hyper-technical reading of the Rules of Evidence but instead is the conclusion Plaintiffs themselves reached less than three weeks ago.[2]

Since the ManRoland Estimates are little more than inadmissible hearsay, they cannot form the basis for an award of damages under Pennsylvania law. *See, e.g.*, *Loughery v. Barnes*, 124 A.2d 120, 122 (Pa. Super. 1956) ("The copy in itself was not competent evidence, as a business record, of the nature of the damages to plaintiff's car and the necessary cost of repairing it."). Unfortunately, the ManRoland Estimates are all Plaintiff's offer in support of their anticipated repair damages. There is no evidence that the amounts reflected in the ManRoland Estimates have been paid, and no affidavit from a representative of ManRoland that could authenticate the records. The Court is left, then, with no admissible evidence whatsoever on which to base a requested damage amount of $500,759.91. Plaintiffs leave the Court with little choice on how to proceed.

**B.**     ***The Newly-Discovered Damages***

The Court's two prior orders unambiguously stated what evidence Plaintiffs were given leave to submit. In its May 16, 2019, Opinion and Order, the Court granted "Plaintiffs 10 days from the date of this Order to submit admissible evidence relative to its claim for damages related to Kappa's repair costs arising from the breach and admissible evidence establishing the need to disassemble, reassemble and reinstall the Press." (ECF No. 29 at 17–18). The Court reiterated this limitation in its May 24, 2019, Order, in which it stated that, "the Court has provided Plaintiffs with additional time to submit evidence related only to the repair costs Kappa will allegedly incur for the disassembly, reinstallation, and repair of the Press which are reflected in the ManRoland

---

[2] The Court recognizes that the Plaintiffs requested thirty days to obtain the necessary evidence. The Court denied the request for a thirty day extension but did grant Plaintiffs an additional ten days. As pointed out in this Court's Order on the Motion for Extension (ECF No. 31), Plaintiffs should have had admissible evidence in support of their damages claims when they moved for default judgment eighteen months ago.

invoices attached to Plaintiffs' most recent Affidavit of Debt (ECF No. 26)." (ECF No. 31 at 1, n.1). No other evidence was to be submitted, and no other damages were going to be considered.

Plaintiffs disregarded the limitations established by the Court's orders. For the first time in any filing in this case, Plaintiffs ask for two new classes of damages: (1) $253,000.00 paid by Kappa to Defendant under the contract that was breached by Defendant; and (2) $60,972.73 incurred by Craftline to perform interim repairs to the Press. In its fifth set of affidavits to this Court, eighteen months after their first request for default judgment and twenty months after they filed their Complaint, and after this Court specifically said it would not consider evidence beyond the ManRoland Estimates, Plaintiffs now ask for nearly $314,000.00 in never-before-seen damages. That request must necessarily be denied.

Even if the Court were inclined to ignore its own orders regarding the scope of damages it will consider, Plaintiffs cannot legally create new damages at this late date. Default damages "must naturally flow from the injuries pleaded." *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014). Here, Plaintiffs pled their injuries with specificity, detailing their categories of damages and the amounts for each down to the penny. (*See* ECF No. 7 at 5). Nowhere in the Amended Complaint do the Plaintiffs allege that Kappa paid any amounts to Defendant on the parties' contract. Instead, Plaintiffs alleged that Defendant's breach "caused and is causing significant delay in the repair, operation, and use of the Press, resulting in the money damages described above," which money damages did not include amounts Kappa paid to Defendant. (*Id*. at 6). Nor did Plaintiffs allege anywhere in the Amended Complaint that Craftline had paid nearly $61,000.00 in interim repairs to the Press. Instead, Plaintiffs alleged that Craftline had incurred various costs in the amount of $88,216.09, an amount that the Court has already determined Craftline cannot recover from Defendant, and an amount that Craftline agreed to be responsible for under its lease agreement

7

with Kappa. (*Id*. at 33–34; ECF No. 29 at 11–15). Not only were these new damages not pled, they were affirmatively excluded by the pleadings. Plaintiffs' pleading defined their injuries, and they cannot add more than $300,000 to those injuries now.

**CONCLUSION**

For the foregoing reasons, this Court now GRANTS in part and DENIES in part Plaintiffs' Second Verified Motion for Entry of Default Judgment. This Court hereby enters judgment in favor of the Plaintiffs and against Defendant in the amount of $1.00.

SO ORDERED on June 13, 2019.

                                            s/ Holly A. Brady
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT